UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MOSES NELSON,
    Plaintiff,

v.

COUNTRYWIDE HOME LOANS, INC.,
et al.,
    Defendants.

No. 3:18-cv-02081 (SRU)

## RULING ON DEFENDANTS' MOTION TO DISMISS

Moses Nelson, proceeding *pro se*, brought this action against Countrywide Home Loans, Inc., Bank of America, N.A., American Brokers Conduit, U.S. Bank National Association, Wells Fargo Bank, N.A., Mortgage Electronic Registration Systems, Inc., "John Does 1 through 100," and "Jane Roes 1 through 100" (collectively, "Defendants"). Defendants Countrywide Home Loans, Inc., Bank of America, N.A., and Mortgage Electronic Registration System, Inc. (collectively, "Moving Defendants") have moved to dismiss under Federal Rules of Civil Procedure Rules 12(b)(1) and 12(b)(6). For the reasons set forth below, the motion to dismiss is **GRANTED**.

**I. Background**

As alleged in the complaint, Nelson entered into two mortgage loans on two separate properties ("the Properties"). Specifically, on January 28, 2005, Nelson executed a note and mortgage, which were secured by the property located at 757-759 Iranistan Avenue, Bridgeport, CT 06605 (the "757 Property"). *See* Compl., Doc. No. 1, at ¶ 2. On October 18, 2006, Nelson executed a note and mortgage, which were secured by the property located at 1584-1586 North Avenue, Bridgeport, CT 06604 (the "1584 Property"). *Id*. Nelson principally alleges that Defendants "fraudulently misrepresented the Value of the subject property(s) and misrepresented

the Loan to Fair Market Value Ratio based upon a false and inflated appraisal overstating the property value." *See* Compl., Doc. No. 1, at ¶ 4.

Nelson asserts violations of 18 section 1962(a) and 1964(c) of the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO") on the basis of "mortgage fraud," as well as "fraud in the factum" and "fraud in the inducement." *See* Compl., Doc. No. 1, at ¶¶ 99, 111–16. Along with compensation for damages and attorneys' fees, Nelson requests "*vacatur* of final foreclosure judgments, discharge of *lis pendens*, Satisfaction of Mortgage," and cancellation of the promissory notes. *Id.* at 47. He further requests a "permanent injunction against all Defendant(s), Successors, Assigns and Agents who try to enforce a claim or judgment that has been fraudulently procured." *Id.*

Although not alleged in the complaint, I will take judicial notice of the following four court proceedings, which are established by publicly-available court records. *Bailey v. Interbay Funding, LLC*, 2018 WL 1660553, at *2 n. 2 (D. Conn. Apr. 4, 2018) ("At the pleading stage, courts may take judicial notice of matters of public record such as pleadings and orders in another action.") (internal citations omitted). First, on April 14, 2014, Nelson filed a complaint against Moving Defendants in the Superior Court for the Judicial District of Fairfield, No. FBT-CV14-5030155-S, alleging, *inter alia*, misrepresentation, misconduct, and fraud, and seeking quiet title with respect to the 757 Property. *See* Exs. B, C to Mot. to Dismiss, Doc. Nos. 14-3, 14-4. The court granted Moving Defendants' motion to strike the complaint on June 4, 2016, and dismissed the case on July 19, 2016 for failure to comply with a court order and for failure to "prosecute the matter with due diligence." *See* Exs. D, E to Mot. to Dismiss, Doc. Nos. 14-5, 14-6.

Second, on June 29, 2015, the Superior Court of Connecticut entered a Judgment of Strict Foreclosure on the 1584 Property, No. FBT-CV17-6061693-S. *See* Ex. H to Mot. to Dismiss, Doc. No. 14-9. Third, on December 5, 2017, Nelson filed for Chapter 13 bankruptcy protection in the United States Bankruptcy Court for the District of Connecticut, Case No. 17-50872, which was later dismissed. *See* Exs. I, J to Mot. to Dismiss, Doc. Nos. 10, 11. Finally, on February 4, 2019, the Superior Court of Connecticut entered a Judgment of Strict Foreclosure on the 757 Property. *See Bank of America, N.A. v. Nelson et al.*, No. FBT-CV17-6061693-S (Conn. Super. Ct. Feb 10, 2019). That proceeding was ongoing when the complaint in the instant matter was filed.

**II. Standard of Review**

    a)    <u>Rule 12(b)(1)</u>

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). A party that moves to dismiss for lack of subject matter jurisdiction "may refer to evidence outside the pleadings." *Id.* (quoting *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)).

    b)    <u>Rule 12(b)(6)</u>

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the

material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiffs, and decide whether it is plausible that plaintiffs have a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted). Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

**III. Discussion**

    a) <u>*Rooker-Feldman* Doctrine</u>

Under the *Rooker–Feldman* doctrine, federal district courts "lack jurisdiction over cases that essentially amount to appeals of state court judgments." *Vossbrinck v. Accredited Home Lenders, Inc*., 773 F.3d 423, 426 (2d Cir. 2014) (internal citations omitted). *Rooker-Feldman* challenges may be brought by either party or *sua sponte* by the court. *Moccio v. New York State Office of Court Admin.*, 95 F.3d 195, 198 (2d Cir. 1996) (internal citations omitted). The elements of the doctrine are as follows:

    (1)    the plaintiff lost in state court;

(2) the plaintiff complains of injuries caused by the state court judgment;
(3) the plaintiff invites district court review of that judgment; and
(4) the state court judgment was entered before the plaintiff's federal suit commenced.

*Vossbrinck*, 773 F.3d at 426 (internal citations and quotation marks omitted).

In this case, all four factors are present with respect to Nelson's claims concerning the 1584 Property. The first and fourth elements are clearly met; the final judgment of foreclosure on the 1584 Property was entered on June 29, 2015, and the instant suit was filed on December 19, 2018. Further, it is evident from the relief Nelson requests that he is complaining of, and seeks to have remedied, the foreclosure judgment on the 1584 Property. In pertinent part, Nelson is requesting that the court vacate the foreclosure judgment, find that the mortgages have been satisfied, cancel the promissory notes, and permanently enjoin Defendants from trying to enforce a claim or judgment against him. Moreover, courts in the Second Circuit have "consistently held that any attack on a [state court] judgment of foreclosure is clearly barred by the *Rooker–Feldman* doctrine." *Gonzalez v. Ocwen Home Loan Servicing*, 74 F. Supp. 3d 504, 514 (D. Conn. 2015), *aff'd sub nom. Gonzalez v. Deutsche Bank Nat. Tr. Co.*, 632 F. App'x 32 (2d Cir. 2016). Having "lost in the [state court] foreclosure action," Nelson "may not now re-litigate the validity of the foreclosure in federal court." *Id.* at 517–18.

To the extent Nelson alleges that the foreclosure judgment resulted from fraud, *Rooker-Feldman* still bars his federal claims. *See Astoria Fed. Sav. & Loan Ass'n v. Arcamone*, No. 3:12-CV-230 WWE, 2012 WL 4355550, at *2 (D. Conn. Sept. 18, 2012) ("Even where a plaintiff alleges that a state court judgment was procured by fraud, *Rooker–Feldman* will divest the federal court of jurisdiction.") (internal citations omitted). Thus, "even if the state court judgment was wrongly procured, it is effective and conclusive until it is modified or reversed in

the appropriate State appellate or collateral proceeding." *Simpson v. Putnam County Nat'l Bank of Carmel*, 20 F. Supp. 2d 630, 633 (S.D.N.Y. 1998) (internal citations omitted).

For the foregoing reasons, Nelson's allegations with respect to the 1584 Property in the present action are a direct invitation for the court to review a final state court judgment with which he disagrees. Because the *Rooker-Feldman* doctrine bars me from considering the merits of those claims, I must decline that invitation. Nelson's 1584 Property claims against Moving Defendants are therefore dismissed for lack of subject matter jurisdiction.

b) <u>Statute of Limitations</u>

i. *RICO Claims*

Nelson's RICO claims with respect to both the 1584 Property and the 757 Property are also time-barred. RICO claims are subject to a four-year statute of limitations, *Koch v. Christie's Intern. PLC*, 699 F.3d 141, 148 (2d Cir. 2012), and the statute of limitations "begins to run when the plaintiff discovers—or should reasonably have discovered—the alleged injury." *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 233 (2d Cir. 2008). In determining whether a plaintiff should reasonably have discovered the injury, the Second Circuit asks "whether a reasonable [person] of ordinary intelligence would have discovered the existence of the fraud." *Nino v. Countrywide Home Loans, Inc.*, 2019 WL 1320282, at *3 (D. Conn. Mar. 22, 2019), *reconsideration denied*, 2019 WL 2357565 (D. Conn. June 4, 2019) (internal citations omitted).

Although Nelson alleges that he "learned of the facts about the misrepresentation of the Appraisal of both properties after doing some research about the subject matter of this Complaint on December 4, 2018," a reasonable person would have discovered such a misrepresentation at a considerably earlier time. Compl., Doc. No. 1, at ¶ 37. Another court in this district recently addressed analogous facts and arguments in a separate suit brought against Moving Defendants

and others, *Nino v. Countrywide Home Loans, Inc.*, 2019 WL 1320282, at *3 (D. Conn. Mar. 22, 2019), *reconsideration denied*, 2019 WL 2357565 (D. Conn. June 4, 2019). In that case, the plaintiff asserted similar RICO and Connecticut fraud claims against the lenders on three mortgages that she executed between 2004 and 2007 for "misrepresent[ing] the value and the loan-to-fair-market-value ratio" of the properties. *Id.* at *2. The court granted the defendants' motion to dismiss, reasoning that all of the claims were time-barred. *Id*. at *3–4. In so holding, the court observed that "[a]ny manipulation of the loan-to-fair-market-value ratios of each of the properties could and should have been discovered by a reasonably diligent purchaser of ordinary intelligence at the time the mortgages were executed." *Id.* at *3.

Like the plaintiff in *Nino*, Nelson alleges that Defendants misrepresented the value of the Properties, as well as the Properties' loan-to-fair-market-value ratio, when his mortgages were executed. *See* Compl., Doc. No. 1. Nelson executed the mortgage for the 757 Property on January 28, 2005 and the mortgage for the 1584 Property on October 18, 2006. *Id*. A reasonably diligent purchaser would therefore have identified a misrepresentation of the Properties at that time. Because Nelson filed the instant complaint on December 19, 2018, over a decade later, I conclude his claims are time-barred.

Even under a more expansive view of when Nelson should have discovered the injury, Nelson's claims are still time-barred. Like the plaintiff in *Nino*, Nelson admits in his complaint that he became aware of "the Housing Bubble and its collapse" between 2005 and 2011, and of the "thousands of foreclosure cases clogging the Courts" between 2008 and 2011. *Nino*, 2019 WL 1320282, at *4; Compl., Doc. No. 1, at ¶¶ 56, 57. Nelson also avers that the "Public at Large" received "storm warnings" of lending fraud through the "Financial Crisis Inquiry Commission Report from Congress" in 2010 and through "the testimony [of] William K. Black

before the House Financial Services Committee" in 2011. Compl., Doc. No. 1, at ¶¶ 61, 64. As the *Nino* court concluded with respect to the plaintiff, Nelson should have become aware of any harm arising from Defendants' allegedly fraudulent conduct at the time of those events. *Nino*, 2019 WL 1320282, at *4. Accordingly, Nelson should have discovered an injury by 2011 at the latest.

Moreover, to the extent Nelson alleges that the continuing violations doctrine excepts his RICO claims from the statute of limitations, that argument fails because the doctrine does not apply to RICO actions. *See Nino v. Countrywide Home Loans, Inc.*, 2019 WL 2357565, at *2 (D. Conn. June 4, 2019) (internal quotation marks and citations omitted). Rather, RICO claims are "subject to a rule of separate accrual." *Id.* (internal quotation marks and citations omitted). Accordingly, a plaintiff asserting a RICO cause of action "has a right to sue, even after the statute of limitations has run as to the underlying racketeering activity, when a 'new and independent injury is incurred from the same [RICO] violation.'" *Id.* (internal citations omitted). "An injury is not independent of the alleged underlying RICO violation where it is caused in material part by the original fraud." *Id.* (internal citations omitted).

In *Nino*, following the court's dismissal of the RICO claims, the plaintiff filed a motion for reconsideration and raised similar arguments. *See Nino v. Countrywide Home Loans, Inc.*, 2019 WL 2357565 (D. Conn. June 4, 2019). The court denied the motion, holding in pertinent part that the four-year statute of limitations still applied because the plaintiff had "not alleged any injury independent of the underlying alleged RICO violation." *Id.* at *2. Here, I also cannot discern from Nelson's complaint any injury that is distinct from the alleged underlying RICO violations – namely, the misrepresentation of the Properties' values and of the Properties' loan-

to-value ratios. For those reasons, I conclude Nelson's RICO claims against Moving Defendants are time-barred.

> ii. *Fraud Claims*

Fraud claims are subject to a three-year statute of limitations in Connecticut. *See* Conn. Gen. Stat. § 52-577 ("No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."). The statute of limitations for those claims begins when the "injury has occurred." *Nino*, 2019 WL 1320282, at *4 (internal citations omitted). "Ignorance of [the plaintiff's] rights . . . will not suspend its operation." *Id.* (internal citations and alteration omitted).

Here, as Nelson acknowledges, his "actual injury of fact accrued on January 28, 2005 and October 18, 2006." Compl., Doc. No. 1, at ¶ 36. Because Nelson filed his current complaint on December 19, 2018, he has not met the three-year statute of limitations. Further, to the extent Nelson argues that the continuing violations doctrine removes his fraud claims from the statute of limitations, I conclude that argument is without merit.[1] In its decision denying reconsideration, the *Nino* court held that the continuing violations doctrine did not apply to the plaintiff's analogous Connecticut fraud claims because the complaint "fail[ed] to allege facts sufficient to raise an inference of a continuing course of conduct." *See Nino*, 2019 WL 2357565, at *2.

Here, like *Nino*, Nelson's Connecticut fraud claims are grounded in Defendants' alleged misrepresentations of the value of the Properties when the mortgages were executed, as well as the failure to "provide Value to attach to the Plaintiff's Mortgage and Promissory Note." Compl., Doc. No. 1, ¶¶ 71, 115. The complaint fails to allege any later wrongful actions

---

[1] "While section 52-577 generally bars claims brought three years after the tortious conduct occurred, '[w]hen the wrong sued upon consists of a continuing course of conduct, the statute does not begin to run until that course of

committed by the Defendants that were related to those initial acts. For those reasons, I conclude that all of Nelson's claims against Moving Defendants – the RICO claims and the fraud claims – are time-barred.

    c)    <u>Failure to State a Claim</u>

Finally, Nelson's RICO and fraud allegations with respect to both the 757 Property and 1584 Property fail to state a claim. To state a RICO claim, a plaintiff must satisfy two burdens. First, the plaintiff "must allege that the defendant has violated the substantive RICO statute." *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983) (citing 18 U.S.C. § 1962). To that end, the plaintiff must first allege the following seven elements: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce." *Id*. Second, the plaintiff must allege that he was "injured in his business or property by reason of a violation of section 1962." *Id.* (citing 18 U.S.C. § 1962) (alteration removed).

Because Nelson's RICO claims are grounded in fraud, they must be pleaded with particularity under Federal Rule of Civil Procedure Rule 9(b). *Moore v. PaineWebber, Inc*., 189 F.3d 165, 172 (2d Cir. 1999) ("Federal Rule of Civil Procedure 9(b) states that in averments of fraud, 'the circumstances constituting fraud . . . shall be stated with particularity.' This provision applies to RICO claims for which fraud is the predicate illegal act."). Therefore, under Rule 9(b), Nelson must "specify the statements [he] claims were false or misleading, give particulars as to the respect in which [he] contend[s] the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Id.* at 173. Nelson must also "allege facts that give rise to a strong inference of fraudulent intent." *Id.*

---

conduct is completed.'" *Nino*, 2019 WL 235765, at *2 (internal citations omitted).

(internal citations and quotation marks omitted). Finally, where "multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) (internal citations omitted).

Here, the complaint does not identify any particular false or misleading statements made by Bank of America, N.A. or Mortgage Electronic Registration, Inc. Rather, the complaint vaguely asserts, in large part, that Defendants "fraudulently misrepresented the Value of the subject property(s)," "misrepresented the Loan to Fair Market Value Ratio based upon a false and inflated appraisal overstating the property value," and "engaged and benefitted from a corrupt enterprise to defraud homeowners." *See* Compl., Doc. No. 1, at ¶¶ 4, 113.

With respect to Countrywide Home Loans, Nelson alleges that it and American Brokers Conduit – the original lenders on his mortgages – "represented the Value of the subject property(s) at the time of the signing of the Loan and Mortgage documents as $310,000 for the [1584 Property], and $210,000 for the [757 Property]." *See* Compl., Doc. No. 1, at ¶ 76. Nelson further alleges that the "property Appraiser for Fairfield County at Bridgeport assessed the Value of the [1584 Property] during the year 2005 at $149,000 and the [757 Property] during the 2006 as $108,000."[2] *Id.* ¶ 77.

The complaint, however, does not describe who exactly misrepresented the appraisal or market values of the Properties. Further, the allegations do not give rise to a "strong inference of fraudulent intent." *Moore*, 189 F.3d at 173. Nelson does not allege "facts and circumstances that would support an inference" that Countrywide Home Loans "knew of specific facts that were contrary to" their representations. *Rombach v. Chang*, 355 F.3d 164, 176 (2d Cir. 2004).

---

[2] Nelson alleges that the "Bridgeport City Assessor's Appraisal of the Value of the Plaintiff's properties is a Public Legal Appraisal reflecting the government's position of the actual Fair Market Value of the property during the

Rather, the complaint sets forth the conclusory allegation that Defendants "knew or should have known that these representations were false." *See* Compl., Doc. No. 1, at ¶ 71. Nelson has therefore failed to state a claim with respect to his RICO allegations. Because Nelson does not assert any new facts or circumstances with respect to his separate fraud claims, those claims are also barred for the same reasons.

Finally, Nelson also alleges that Countrywide Home Loans and American Brokers Conduit unlawfully transferred the "equitable interests of Plaintiff's property" to others without providing Nelson "any money to fund the fraudulently induced" loan. *Id*. at ¶¶ 92–102. Drawing all inferences in favor of Nelson, I find that those conclusory allegations, too, fail to state claims upon which relief can be granted; they do not "raise a right to relief above the speculative level." *Bell Atl. Corp.*, 550 U.S. at 555. Accordingly, all of Nelson's counts against Moving Defendants are dismissed for failure to state a claim.

## IV. Conclusion

For the reasons stated above, Moving Defendants' Motion to Dismiss (Doc. No. 14) is **GRANTED**.

It is so ordered.

Dated at Bridgeport, Connecticut, this 30th day of September 2019.

                                             /s/ Stefan R. Underhill
                                            Stefan R. Underhill
                                            United States District Judge

---

particular year at issue." *Id*. at ¶ 78.